UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

               Plaintiff,

v.

EDWARD DUANE FAIRBANKS,

               Defendant.

Crim. No. 20-259 (JRT/LIB)

MEMORANDUM OPINION AND ORDER
ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

---

Deidre Y. Aanstad, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Paul C. Engh, 650 Third Avenue South, Suite 260, Minneapolis, MN 55402, for defendant.

On August 13, 2021, Magistrate Judge Leo Brisbois issued a Report and Recommendation ("R&R"), recommending that Defendant Edward Duane Fairbanks's Motion to Suppress Statement and Motion to Suppress Search and Seizure be denied. Fairbanks objects to both recommendations. Because Fairbanks's statement and his consent to the search and seizure of his cell phone and clothing were both voluntary, the Court will overrule Fairbank's objections, adopt the R&R, and deny the Motions.

1

## BACKGROUND

**I.    FACTUAL BACKGROUND**

On June 9, 2020, Minnesota Bureau of Criminal Apprehension Special Agent Rick Wuori Jr. ("SA Wuori") was asked to assist in an investigation into the injury of a child that had occurred the previous day on the White Earth Reservation. (Mots. Hr'g Tr. 18–19, June 21, 2021, Docket No. 47.) The child was hospitalized and had suffered a significant head injury. (*Id.* at 41.) Defendant Fairbanks was the only adult present at the time of the incident and because SA Wuori had received information that the injury was not accidental, Fairbanks was the primary suspect. (*Id.* at 42–43.) At 8:34 p.m. on June 9th, SA Wuori, along with Mahnomen County Sheriff's Office Investigator Winkler ("Investigator Winkler") made contact with Fairbanks in a gas station parking lot. (*Id.* at 20–21.) The entire interaction was recorded. (Gov't Hr'g Exs. 1–2, May 21, 2021.) Fairbanks was in a vehicle with his grandmother and uncle. (*Id.* at 27–28.) After identifying Fairbanks, SA Wuori and Investigator Winkler asked Fairbanks if he would "mind coming down to the sheriff's office and talking to [them]?" (Gov't Ex. 2 at 2; Hr'g Tr. at 25–26.) Fairbanks was notified that he was not under arrest. (Gov't Ex. 2 at 3.) Fairbanks agreed and was driven to the sheriff's office by his grandmother and uncle in their vehicle; the investigators travelled in tandem with Fairbanks to the office. (Hr'g Tr. at 28.)

Once at the sheriff's office, SA Wuori activated his recording device and he, along with Investigator Winkler, brought Fairbanks into a "squad room" for the interview. (Gov't Hr'g Exs. 3–4, May 21, 2021; Hr'g Tr. at 28–30, 46.)  To get to the squad room, Investigator Winkler used a key fob to open an exterior door to the sheriff's office.  (Hr'g Tr. at 30, 46.)  The squad room had enough space for three people and the door to the room was closed for privacy, though not locked.  (*Id.* at 31–32.)  No key fob was required to pass through the door to the squad room nor was one required to exit the building from their location.  (*Id.* at 31–32, 47.)  During the interview, Fairbanks sat closest to the door.  (*Id.* at 32–33.)  Both investigators were armed but neither took their firearms out of the holster.  (*Id.* at 34–35.)  Fairbanks was not restrained in any way.  (*Id.* at 31.)

The investigators interviewed Fairbanks about the incident with the child.  SA Wuori testified that the purpose of the interview was to obtain a confession from Fairbanks. (*Id.* at 48–49.)  At the beginning of the interview SA Wuori informed Fairbanks that he was not under arrest, that he could leave at any time, that the door was open, and that he could walk out and terminate the interview whenever he pleased.  (Gov't Ex. 4 at 1.)  Fairbanks affirmatively responded that he understood this and agreed to continue talking to the investigators.  (*Id.*)  SA Wuori obtained some background information on Fairbanks and then stated again that Fairbanks was free to leave at any time and that he could stop the statement if he so chose.  (*Id.* at 2.)  Fairbanks affirmatively agreed to continue speaking to the investigators.  (*Id.*)

3

Over the course of the interview, Fairbanks asserted that the child's injuries were the result of a mattress falling on the child and that it was an accident. (*Id.* at 6–8, 19.) When pressed by the investigators, he insisted that he was relaying the truth of what had occurred. (*Id.* at 19.) SA Wuori testified that he did not believe Fairbanks was under the influence of either drugs or alcohol during the interview. (*Id.* at 57.)

SA Wuori asked if he could take Fairbanks's cell phone and download data off of it. (*Id.* at 22.) Though initially reluctant, Fairbanks agreed, especially after he was told that SA Wuori did not care about other incriminating evidence on the phone such as drug related information. (*Id.* at 24.) Fairbanks signed a Consent to Search form providing his consent to the investigators to search his cell phone. (Gov't Hr'g Ex. 5, May 21, 2021.) Prior to signing the Consent to Search form, SA Wuori informed Fairbanks that he cannot force Fairbanks to give his consent, that Fairbanks has the right to deny consent, and that he can revoke consent at any time. (Gov't Ex. 4 at 24.) The investigators also asked Fairbanks if they could take his clothing that he was wearing in the interview. (*Id.* at 22–23.) Fairbanks responded "you can take [th]em if you want." (*Id.* at 23.) Fairbanks gave his clothes to the investigators, but the investigators did not include the clothing on the Consent to Search form. (*Id.* at 26, 39–40.) The interview concluded after fifty-five minutes, and Fairbanks was escorted out of the sheriff's office through the exterior door which required a key fob to open. (*Id.* at 40, 47.) Fairbanks was not arrested at that time. (*Id.* at 55.)

## II. PROCEDURAL HISTORY

On November 5, 2020, Faribanks was indicted with assault of the minor child. (Indictment, Nov. 5, 2020, Docket No. 1.) Fairbanks filed a Motion to Suppress Statement and a Motion to Suppress Search and Seizure. (Mot. Suppress Statement, Apr. 27, 2021, Docket No. 37; Mot. Suppress Search & Seizure, Apr. 27, 2021, Docket No. 38.) On May 21, 2021, the Magistrate Judge held a hearing regarding the Motions and SA Wuori testified at that hearing. (Min. Entry, May 21, 2021, Docket No. 43.)

On August 13, 2021, the Magistrate Judge issued an R&R addressing the Motions. (R&R, Aug. 13, 2021, Docket No. 53.) The Magistrate Judge recommended denying both Motions because the statement was given voluntarily and the search and seizure was not unreasonable since Fairbanks had voluntarily given consent to search. (R&R at 13, 18.) Fairbanks objects to the R&R asserting that neither Motion should be denied. (Def.'s Obj., Aug. 26, 2021, Docket No. 54.)

## DISCUSSION

### I. STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774, at *2 (D. Minn. Sept.

5

28, 2008). For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

II.   ANALYSIS

   A. Fairbanks's June 9, 2020 Statement to Law Enforcement

Fairbanks objects to the R&R on the grounds that the Magistrate Judge incorrectly concluded that the statements made during his June 9th interview with law enforcement were made voluntarily.[1] The test for determining whether a statement is voluntary is whether the statement was "extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004) (quotation omitted). To make this determination, courts inquire into the totality of the circumstances. *Id.* The Court must look to the "conduct of the officers and the characteristics of the accused." *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 952 (8th Cir. 2001).

---

[1] Fairbanks does not assert that he was in custody at the time of the interview. (Def.'s Obj. at 4.)

There is no evidence that Fairbanks's will was overborne during the interview, rendering his statement involuntary. Fairbanks argues that the investigators gave him no choice to drive away after their initial contact and instead followed him in a caravan-like manner to the police station. Fairbanks mischaracterizes his initial contact with the investigators. He was asked if he would be willing to come down to the sheriff's office to talk to them, he was expressly told he was not under arrest, and he was allowed to drive to the sheriff's office in a separate car. The investigators drove next to Fairbanks because they were all travelling from one location to another at the same time. Fairbanks never attempted to or indicated that he wanted to drive away; any assertion that he was not free to do so is mere speculation. These facts cannot support Fairbanks's contention that he had no choice but to drive to the sheriff's office when he expressly agreed to meet the investigators there.

During the investigation, SA Wuori and Investigator Winkler made no threats towards Fairbanks nor did they engage in any coercive tactics. The recording of the interview shows the investigators used conversational tones over the course of the entire interaction. The investigators, while armed, never drew their weapons. The interview was conducted in a room that comfortably fit all three individuals. Fairbanks sat closest to the door which was closed but only for privacy, the door remained unlocked, and Fairbanks was notified of this fact. The investigators expressly informed Fairbanks twice that he was free to leave at any time, that the door was open, and that he could "walk

out [and] terminate this interview at any time." (Gov't Ex. 4 at 1–2.) While a key fob was needed to enter through the door the investigators led Fairbanks through, if Fairbanks would have attempted to leave on his own, he could have exited the building without a key fob. (Hr'g Tr. at 47.) The interview was short in duration, ending in less than an hour.

Fairbanks appeared to clearly understand what was being asked of him, responded coherently to questions, and clarified details of the incident. Throughout the interview, Fairbanks insisted that he was telling the truth and even pushed back against investigators' suggestions that he was not. This fact undermines any argument that Fairbanks was susceptible to the police "dynamics that prejudiced him." (Def. Obj. at 7.) Fairbanks's conduct during the interview shows that he did not have any issues asserting himself in the presence of the investigators and indicates that his will was not overborne.

Fairbanks exhibited average intelligence throughout the interview. Average intelligence is generally all that is required to find that a statement was made voluntarily. *LeBrun*, 363 F.3d at 726. Contrary to what Fairbanks asserts, he need not be a "sophisticate" in order for the Court to find that his statements were voluntary. Under the totality of circumstances, Fairbanks's will was not overborne, his statements were voluntary, and therefore the Court will deny Fairbanks's Motion to Suppress Statement.

### B. The Search and Seizure of Fairbanks's Cell Phone and Clothing

Voluntary consent by a defendant is an exception to the Fourth Amendment warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). In

determining whether consent is voluntary, the Court looks at the totality of the circumstances. *United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005). The Court must ask whether "a reasonable person would have believed that the subject of a search gave consent that was the product of an essentially free and unconstrained choice." *United States v. Cedano-Medina*, 366 F.3d 682, 684 (8th Cir. 2004) (cleaned up). In evaluating whether the consent was voluntary, the Court considers the characteristics of the person consenting including their "age, intelligence and education, whether [they] were] under the influence of drugs or alcohol, whether [they were] informed of [their] rights to withhold consent, and whether [they were] aware of rights afforded criminal suspects." *Esquivias*, 416 F.3d at 700 (quotation omitted). The Court must also consider the environment where the consent was obtained including the length of detention, whether the police used any threats or intimidation, whether the police made promises or misrepresentations, whether the individual was under arrest or in custody, and whether the consent occurred in public. *Id.* (citing *United States v. Smith*, 260 F.3d 922, 924 (8th Cir. 2001). The critical question is "whether the individual's will has been overborne and his capacity for self-determination critically impaired, such that his consent to search must have been involuntary." *United States v. Vinton*, 631 F.3d 476, 482 (8th Cir. 2011) (cleaned up).

As it relates to Fairbanks's consent to search his cell phone, the investigators told Fairbanks that he had the right to grant his consent and the right to revoke it at any time.

The Consent to Search form, signed by Fairbanks, expressly stated that Fairbanks voluntarily gave his consent, that any information could be used against him at a hearing or trial, that he could limit the scope of consent, or that he could revoke his consent at any time. The Consent to Search form did not cover Fairbanks's clothing, but he orally agreed to give the clothing to the investigators.[2]

Fairbanks's relevant characteristics all indicate that his consent was voluntary. He was of the age of majority, he was of average intelligence, there was no indication he was under the influence of drugs or alcohol, and he was informed of his rights to withhold consent by the investigators' statements and on the Consent to Search form. While Fairbanks was not read his *Miranda* rights, it is established law that a lack of such reading does not render consent involuntary. *See, e.g.*, *Saenz*, 474 F.3d at 1137 ("[A]bsence of Miranda warnings would not make an otherwise voluntary consent involuntary.") As to the relevant environmental factors, Fairbanks's detention was brief, the investigators did not use threats or intimidating conduct, they made no promises or misrepresentations to Fairbanks, and Fairbanks was not in custody or under arrest when he gave his consent. While the consent to the search and seizure happened in private, the totality of the circumstances indicate that a reasonable person would believe that Fairbanks consented

---

[2] Consent to search is valid even if given orally; law enforcement officers need not obtain consent in writing. *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007).

to the search and seizure of both his cellphone and his clothing. Thus, the Court will deny Fairbanks's Motion to Suppress Search and Seizure.

In sum, the Court will overrule Fairbanks's objections, adopt the R&R, and deny the Motion to Suppress Statement and the Motion to Suppress Search and Seizure.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Fairbanks's Objection to the Report and Recommendation [Docket No. 54] is **OVERRULED**;

2. The Magistrate Judge's August 13, 2021 Report and Recommendation [Docket No. 53] is **ADOPTED**;

3. Fairbank's Motion to Suppress Statement [Docket No. 37] is **DENIED**;

4. Fairbank's Motion to Suppress Search and Seizure [Docket No. 38] is **DENIED**.

DATED: November 1, 2021　　　　　　　　　　　　___John M. Tunheim___
at Minneapolis, Minnesota.　　　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　　　United States District Court